**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIO PATINO,<br>CDCR #F05346,<br><br>                       Plaintiff,<br>vs.<br><br>D. DOMINGUEZ, *et al.*,<br>                       Defendants. | Case No. 25-cv-00589-BAS-KSC<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)** |

Mario Patino ("Patino" or "Plaintiff"), a prisoner currently confined at Centinela State Prison ("CEN"), is proceeding pro se with a civil action pursuant to 42 U.S.C. § 1983. This case was originally filed in the United States District Court for the Central District of California on November 22, 2024. (*See* ECF No. 1.) That court granted Plaintiff's motion to proceed *in forma pauperis* ("IFP") on January 24, 2025. (ECF No. 6.) On March 10, 2025, however, that court found venue was proper in the Southern District of California and transferred the case to this Court. (ECF No. 10.)

In his Complaint, Patino alleges that Defendants violated his rights under the Fourth

– 1 –

Amendment, the First Amendment, and the Due Process Clause by subjecting him to an unreasonable search and subsequently confiscating a religious necklace he was wearing. (*See generally* ECF No. 1.)  For the reasons discussed below, the Court dismisses the Complaint without prejudice for failure to state a claim.

## I.    SCREENING PURSUANT TO 28 U.S.C. § 1915(e) AND § 1915A(b)

### A.    Legal Standards

Because Plaintiff is proceeding IFP, the Court must screen his Complaint and *sua sponte* dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), to the extent it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).  "The standard for determining whether a Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Id*.  The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard.  *Id.*

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.    Plaintiff's Allegations

Patino alleges that on October 18, 2023, Dominguez, a CEN correctional officer, came to his cell and ordered Patino to come out.  (ECF No. 1 at 5.)  Patino complied.  (*Id.*)

Dominguez then handcuffed and searched Plaintiff's person, but found no contraband. (*Id.*) Dominguez then escorted Patino to a shower in the building, where he conducted an unclothed body search, during which Dominguez discovered Patino was wearing a "St. Jude yellow metal medallion necklace." (*Id.*) Dominguez ordered Patino to remove the necklace and Patino refused. (*Id.*) Shortly thereafter, Plaintiff was escorted to "medical to provide a urine sample." (*Id.*)

At some point, correctional officer Miranda ordered Patino to "relinquish" the St. Jude necklace and told Plaintiff that if he refused, he would be placed in a "holding cage." (*Id.*) Patino explained that the necklace was a religious item that he had purchased by an "approved vendor." (*Id.*)

Correctional Sergeant Irving suggested Patino "release" the necklace "as property through the mail." (*Id.* at 5–6.) Patino agreed to this suggestion, filled out a property release form, and gave both the form and the necklace to Miranda. (*Id.* at 6.) However, "moments later," Plaintiff discovered he had been "mislead[,]" and the necklace was "confiscate[d] . . . without a valid reason." (*Id.*) Patino was then given a document which indicated the necklace was confiscated by Parkhill, another staff member. (*Id.*)

### C.   Discussion

Patino names Dominguez, Miranda, Irving and Parkhill as Defendants, in both their individual and official capacities. (*Id.* at 3–5.) He alleges that he was unreasonably searched in violation of the Fourth Amendment, and that his necklace was improperly confiscated in violation of his First Amendment and due process rights. (*Id.* at 5–7.) Patino also appears to allege Defendants violated portions of the California Penal Code and Title 15 of the Code of Regulations. (*Id.* at 7.) He seeks money damages and injunctive relief. (*Id.* at 8– 9.)

#### 1.   Fourth Amendment

Plaintiff alleges his Fourth Amendment rights were violated by Dominguez and Miranda when he was searched, and his necklace confiscated, "without reason." (*Id.* at 5.) The Ninth Circuit has held that the "Fourth Amendment right of people to be secure against

unreasonable searches and seizures 'extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context.'" *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988)). While prisoners retain limited rights to bodily privacy, *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 974–75 (9th Cir. 2010), neither routine clothed pat-down searches nor random visual strip searches of inmates violate the Fourth Amendment. *See Grummet v. Rushen*, 779 F.2d 491, 495 (9th Cir. 1985); *Hudson v. Palmer*, 468 U.S. 517, 529 (1984) ("[W]holly random searches are essential to the effective security of penal institutions."); *Thompson*, 111 F.3d at 700 (upholding visual strip searches conducted outside prisoner's cell as reasonably related to the legitimate penological interest in keeping drugs out of the prison).

Patino has failed to plausibly allege the initial clothed search and subsequent unclothed search for contraband were unreasonable in the prison context. *See Michenfelder*, 860 F.2d at 332 (stating a strip search is only unreasonable under the Fourth Amendment where it is "excessive, vindictive, harassing, or unrelated to any legitimate penological interest"). Therefore, he has failed to state a Fourth Amendment claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### 2. First Amendment

Patino alleges that Dominguez, Miranda and Irving violated his First Amendment right to free exercise when his St. Jude necklace was confiscated. (ECF No. 1 at 6.) "Inmates . . . retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). To implicate the Free Exercise Clause, the prisoner's belief must be both "sincerely held" and "rooted in religious belief, not in 'purely secular' philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981)).

If the inmate makes his initial showing of a sincerely held religious belief, he must then show that prison officials "substantially burdened" the practice of his religion by

preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *See Long v. Sugai*, 91 F.4th 1331, 1337 (9th Cir. 2024); *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones*, 791 F.3d at 1031–32 (citation omitted). Even then, a substantial burden on an inmate's religion is permitted if it "is reasonably related to legitimate penological interests."[1] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Here, Patino has not satisfied the threshold requirement that he allege facts showing that his need to possess the St. Jude necklace is "sincerely held" and "rooted in religious belief." *See Malik*, 16 F.3d at 333. In addition, he has failed to plausibly allege the exercise of his religion was substantially burdened by the confiscation of his necklace. *See Jones*, 791 F.3d at 1031. Therefore, Plaintiff has failed to state a First Amendment free exercise claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### 3. Due Process

Next, Patino alleges that all four Defendants violated his right to due process by confiscating his necklace. (ECF No. 1 at 5, 7.) The Due Process Clause of the Fourteenth Amendment protects individuals from state deprivations of life, liberty, or property without due process of law. With respect to a prisoner's property, the Supreme Court has held that "an unauthorized intentional deprivation of property" by a prison official constitutes a violation of due process if a meaningful post-deprivation remedy for the loss is unavailable.

---

[1] In determining whether a prison regulation is reasonably related to a legitimate penological interest, Courts consider: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Beard v. Banks*, 548 U.S. 521, 529 (2006) (citing *Turner*, 482 U.S. at 89–91).

*Hudson*, 468 U.S. at 533.

Here, Patino has an adequate post-deprivation remedy under California law; therefore, he may not pursue a due process claim arising out of the alleged unlawful confiscation of his personal property. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95). Accordingly, he has failed to state a due process claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S. at 678.

### 4. State Criminal Law and Regulations

Finally, while not raised as a separate claim, Plaintiff also appears to allege Defendants' actions violated state criminal laws and regulations, including Sections 518–21 and 484–90 of the California Penal Code, as well as Sections 3287 and 3413(a) of Title 15 of the California Code of Regulations. (ECF No. 1 at 7.)

"As a general rule, a violation of state law does not lead to liability under § 1983." *Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998). Specifically, Plaintiff's allegations that Defendants violated California criminal law—even if true—are insufficient to state a viable § 1983 claim. *See Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999) (concluding the district court properly dismissed claims brought under several sections of the California Penal Code because those code sections did not create enforceable individual rights). In addition, a failure to adhere to prison regulations and guidelines does not, without more, violate a federal constitutional right. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) ("[S]tate departmental regulations do not establish a federal constitutional violation."); *see also Nible v. Fink*, 828 F. App'x 463, 464 (9th Cir. 2020) (affirming dismissal of claims based on violations of Title 15 of the California Code of Regulations because the regulations did not create private right of action). Therefore, to the extent Plaintiff seeks relief based on purported violations of state laws and regulations he fails to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### D. Leave to Amend

In light of his pro se status, the Court grants Plaintiff leave to amend his pleading and address the pleading deficiencies identified above. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## II. CONCLUSION AND ORDER

For the foregoing reasons, the Court:

1. **DISMISSES** Plaintiff's Complaint (ECF No. 1) in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

2. **GRANTS** Plaintiff **forty-five (45)** days leave from the date of this Order in which to file a First Amended Complaint which cures the pleading deficiencies discussed above. Plaintiff's First Amended Complaint must be complete by itself without reference to his previous pleadings. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original.").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

**DATED: June 4, 2025**

Hon. Cynthia Bashant, Chief Judge
United States District Court